IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Cr. No. 21-CR-120-WES-PAS |
| JAMES W. JACKSON | |
| Defendant. | |

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO RECONSIDER MOTION TO SUPPRESS**

Defendant James W. Jackson's "Motion to Reconsider Defendant's Motion to Suppress" (ECF No. 45)[1] should be denied.  As the Court has properly found, the evidence was obtained via a valid search warrant, supported by probable cause and sufficiently particularized, relied upon in good faith.  The defendant's "supplemental facts" only confirm the correctness of the Court's original ruling.

**Legal Standard**

Motions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust. *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 7 n. 2 (1st Cir. 2005). Defendant has done none of the above.  Additionally, the Court has discretion to reconsider its own ruling. *United*

---

[1] Defendant's Motion to Reconsider was filed twice (ECF No. 45 & ECF No. 46), with the exhibits split across the two filings, but is the same substantive motion.

*States v. Almonte*, 454 F. Supp.3d 146, 151 (D.R.I. 2020) (citations omitted). There is no reason to do so.

Defendant cites no legal change and offers no new evidence. Nor does he even claim the original decision was based on a legal error of law or injustice. The Motion to Reconsider is simply a re-hashing of the arguments raised in the original Motion to Suppress (ECF No. 36), with a pasted-on First Amendment argument and "supplemental facts regarding the characteristics of the church rectory," that undermine his position. Defendant continues to conflate the paradigm for searching a multi-unit dwelling such as an apartment building with that of a single premises containing multiple occupants. The Court correctly rejected those arguments in its Memorandum and Order denying the Motion to Suppress (ECF No. 40).

### **The Defendant's "Supplemental Facts"**

A district court reviewing a search warrant ordinarily "is tasked with making a judgment based on what appears within the four corners of the affidavit…" *United States v. Tanguay*, 787 F.3d 44, 53 (1st Cir. 2015). "It is entitled to assume that the warrant affidavit is the product of a good-faith investigation and provides a reasonably complete picture of the circumstances…" *Id*. Thus, the defendant's "supplemental facts" are irrelevant to the analysis. Notwithstanding, the "supplemental facts" undermine his claim that the rectory was a multi-unit dwelling and underscore that the rectory was in fact a single multi-occupant premises.

These "supplemental facts" include five photographs of the exterior of Saint Mary's Church and rectory, (Def. Exhibits A and C through F), all of which confirm the description provided in the warrant application was accurate:

> [A] stone church with "St. Mary's Catholic Parish" affixed to a sign in the front of the building. The search will include exterior buildings on the property to include a yellow building commonly known as the rectory. The search will include storage spaces located on the premises used by residents.

Search Warrant, Complaint and Affidavit (Attached as Exhibit A to Government's Response to Motion to Suppress, ECF No. 39).

In addition, the "supplemental facts" include nineteen photographs of the interior of the rectory (Def. Exhibits H through Z), taken by an investigator for the defense team, post-indictment. It should be noted that in order for *the police* to enter the rectory and make such observations of the interior, they would have needed a warrant. It therefore defies logic that they should have been required to take such photographs for submission to the authorizing judge *as a precursor* to applying for a warrant.

Finally, the "supplemental facts" include a recent parish bulletin and affidavits from two current resident priests at St. Mary's. The affidavits merely describe the layout and usage of the interior of the rectory, consistent with the photographs.

**<u>Argument</u>**

Collectively, the photographs and affidavits confirm that the rectory is a single multi-occupant premises, not a multi-unit dwelling such as an apartment building or two-family house. The first floor of the rectory has a shared kitchen, communal dining room and living room on the first floor as well as multiple office spaces. The second

floor has a common sitting room with a television used by the priests, bedrooms, and a shared bathroom.  The largest bedroom has its own bathroom and is under lock and key at the pastor's "discretion," i.e., some of the time.  Both the third floor and the basement are shared storages spaces. The residents of the rectory do not have separate entrances from the street, nor do they have individual mailboxes or doorbells.  In sum, the resident's living spaces are "not equipped for independent living."  *United States v. McLellan*, 792 F.3d 200, 213 (1st Cir. 2015).  Thus, any misgivings the Court may have had regarding the applicable paradigm (Memorandum and Order at 9-10) are answered by the defendant's "supplemental facts," – but not in his favor.  Rather they confirm the Court correctly denied the Motion to Suppress in the first instance.

This is because "a multi-occupant dwelling is not the same thing as a multi-unit dwelling for the purpose of analyzing whether… a search warrant was overly broad in its description of the premises to be searched."  *United States v. Hoston*, 2016 WL 4147642 at *8 (E.D.N.C. 2016)(citing *McLellan* and other cases).  "That a dwelling might be shared with others is not, by itself, enough to require officers to exclude portions of that dwelling from the warrant's scope: probable cause often exists to search the entire dwelling because it is reasonable to assume the suspect has access to the entire dwelling." *United States v. Schwinn*, 376 Fed. Appx. 974, 982 (11th Cir. 2010). *See also*, *e.g.*, *United States v. Hinds*, 856 F.2d 438, 441 (1st Cir. 1988) ("We do not think the mere presence of more than one family in a building automatically changes its character from a single family to a multi-family").

**First Amendment Claim**

The defendant suggests that the living situation of priests ought to entitle them to some higher, unarticulated standard of particularity or else "the freedom of religion clause of the First Amendment, as well as freedom of speech, may also be implicated." (Motion to Reconsider at 7). Defendant suggests that rather that applying to a judge for a search warrant, the police ought to be required to first "question the subjects or knowledgeable persons before applying for and/or executing a warrant?" (Motion to Reconsider at 7). Defendant does not identify these "knowledgeable persons." Defendant also suggests the police be limited to seizing the internet router, rather than the actual contraband. Put aside the obvious practical problems with such a policy (spoilation and/or destruction of evidence, absconding, etc.,). Defendant cites no law for this proposition, nor can the government locate any. Fourth Amendment jurisprudence is rooted in the concept that the Constitution protects against *warrantless* searches into spaces where the individual has a subjective expectation of privacy "that society is prepared to recognize as reasonable." *Katz v. United States*, 389 U.S. 347, 361 (1967). Surely society is not prepared to recognize as reasonable a more stringent warrant standard for pedophile priests who may be concealing child pornography in the confines of their rectory. We do not have different standards of law for different classes of people in the United States. *See e.g., Trump v. United States*, 54 F.4th 689, (11th Cir. 2022) ("We cannot write a rule that allows any subject of a search warrant to block government investigations after the execution of the warrant. Nor can we write a rule

that allows only former presidents to do so.").  What the defendant demands is simply not the law.

**Good Faith**

The defendant's good faith argument simply takes for granted his failed attack on particularity and should be rejected.  The defendant's submission of "supplemental facts" avoids the need to even rely on good faith.  In any event, as the Court observed:

> Here, "the warrant, read comprehensively and in context, was not so 'facially deficient . . . that the executing officers [could not] reasonably presume it to be valid.'" United States v. Kuc, 737 F.3d 129, 134 (1st Cir. 2013) (quoting Leon, 468 U.S. at 923)); cf. Sheppard, 468 U.S. at 988, 988 n.5 (officers reasonably relied on validity of warrant even where "the description in the warrant was completely inaccurate and the warrant did not incorporate the description contained in the affidavit"). Neither has Defendant pointed to any misconduct by police here that should be deterred.

(Memorandum and Order at 11).

Accordingly, the Motion to Reconsider should be denied.

Respectfully submitted,

ZACHARY A. CUNHA
United States Attorney

By:    s/  John P. McAdams
       JOHN P. McADAMS
       Assistant U.S. Attorney
       U.S. Attorney's Office
       District of Rhode Island

## CERTIFICATION OF SERVICE

On January 10, 2023, I caused the within "Government's Response to Defendant's Motion to Reconsider Motion to Suppress" to be filed electronically, providing service to:

John L. Calcagni, III, Esq.
Counsel for James W. Jackson

/s/ John P. McAdams
JOHN P. McADAMS
Assistant U.S. Attorney
United States Attorney's Office
One Financial Plaza, 17th Floor
Providence, RI 02903
401-709-5000 (office)
401-709-5001 (facsimile)
john.p.mcadams@usdoj.gov