UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES W. JACKSON,<br><br>Defendant. | Criminal Case No. 21-CR-120-WES |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF SUBSEQUENT CHILD SEXUAL ABUSE MATERIAL POSSESSION**

The United States of America respectfully opposes the motion in limine to exclude evidence at trial, (ECF No. 53), filed by Defendant James W. Jackson ("Defendant" of "Jackson"), that Defendant possessed images of child erotica on a laptop after he was arrested, and accessed additional Child Sexual Abuse Material ("CSAM") through a peer-to-peer network while on pretrial release. This evidence is specially relevant because it makes it more likely that Defendant himself knowingly and intentionally received and possessed the CSAM he is charged with in this case, and that there was no mistake or accident involved in his possession of it; the evidence is, therefore, admissible under Rule 404(b). This evidence also survives Rule 403 balancing because it is extremely probative, and creates no unfair prejudice to Defendant. Defendant's motion to exclude the evidence should be denied.

**Travel of the Case**

On multiple occasions beginning September 4, 2021, members of the Rhode

Island Internet Crimes Against Children (ICAC) Task Force identified a computer sharing CSAM via a peer-to-peer network.  Through additional investigation, the ICAC traced the computer to St. Mary's Church in Providence.  On October 30, 2021, members of the ICAC executed a search warrant at St. Mary's and the adjacent rectory.  Inside defendant James Jackson's bedroom office, ICAC members located an HP laptop computer and attached external hard drive.  The laptop was open and running, utilizing the password protected profile "james jackson." A forensic preview identified hundreds of image and video files depicting CSAM on the external hard drive.  A subsequent forensic examination located over 12,000 images and 1300 video files depicting CSAM.  Jackson was arrested on a criminal complaint and subsequently indicted for receipt and possession of CSAM.

## Evidence in Question

The government intends to seek admission of two categories of evidence relating to Defendant's possession of CSAM and child erotica following his arrest.

The first category of evidence comes from ta laptop the Defendant turned in to U.S. Probation in Kansas in November 2021.  Jackson was released pending trial subject to certain conditions. Those included that he reside with his sister and her husband in Kansas, and that he possess only one internet connected device, subject to monitoring software utilized by Probation.  The authorized device was a smartphone. In November 2021, Jackson informed his supervising Probation Officer in Kansas that he wished to exchange the smartphone for a laptop computer.  Jackson presented the

laptop to Probation in Kansas for installation of the monitoring software. Probation conducted a search of the laptop which indicated there may be images on the device that were of adult pornography, child pornography and computer-generated child pornography images.  Further review of the device found search items identified as "innocent virgin" "little sister" and "Lolita."   Accordingly, the latop was returned to Rhode Island, where a search warrant was obtained and the ICAC conducted a digital forensic examination of the contents of the laptop's hard drive. Anaysis determined that the operating system on the laptop was registered to "frjjackson@msn.com" and that the only active user account on the laptop had a display name of "james jackson."

      The analyst also discovered dozens of images depicting computer-generated children engaged in sexual acts. The original images files were no longer located on the hard drive; instead, the analyst observed the images directly through the hard drive's "thumbcache," which is a set of files that stores depictions of images that are presented to the user when a folder containing the images is viewed in the operating system. The analyst further observed link files, which are generated by the operating system when a user accesses an underlying file, bearing file names with titles that reflect common CSAM file names and file names consistent with animated images depicting sexual activity. The original files associated with these link files were no longer on the laptop's hard drive, and the analyst could not view that subset of files directly.

The second category of evidence relates to a search warrant executed at the residential location in Kansas where Defendant was living with his sister and her husband during pre-trial supervised release. In June 2022, members of the Kansas ICAC identified a computer sharing child pornography via peer to peer software. Through investigation, the conduct was traced to the residence in Kansas where Jackson was staying with his sister and brother-in-law. Kansas ICAC obtained a search warrant for the residence. The evidence the government seeks to introduce includes the basis for the search warrant, namely that a computer registered to an IP address associated with the residence where Defendant was living downloaded at least two files that contained CSAM using a peer-to-peer network. The government also seeks to introduce evidence that, during the subsequent search of the residence, no evidence of any CSAM or peer-to-peer downloads was located on the devices the owned by the other residents of the home.

Further, investigators seized a portable computer and an external hard drive from Defendant's bedroom in the residence. Investigators analyzed the external hard drive seized from Defendant's bedroom and found image files depicting Defendant, indicated his ownership of the device, and numerous files with filenames indicative of CSAM. The files had been deleted and investigators were not initially able to recover the files themselves, but could observe their file names. The portable computer seized from Defendant's bedroom was found to be encrypted, and investigators have been unsuccessful, to date, at accessing data from the computer because of the encryption.

**Legal Framework**

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, the Rule goes on to provide that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

The First Circuit employs a two-step analysis for evaluating the admissibility of evidence challenged under Rule 404(b). *United States v. Tkhilaishvili*, 926 F.3d 1, 15 (1st Cir. 2019). To be admissible, the Rule 404(b) evidence must have "special relevance;" that is, it must be "offered not to show a defendant's evil inclination but rather to establish some material fact." *Id.* (quoting *Veranda Beach Club Ltd. P'ship v. W. Sur. Co.*, 936 F.2d 1364, 1373 (1st Cir. 1991); *see also United States v. Habibi*, 783 F.3d 1, 2 (1st Cir. 2015) (quoting *United States v. Doe*, 741 F.3d 217, 229 (1st Cir. 2013)). In determining whether evidence has "special relevance to an issue in the case such as intent or knowledge," the First Circuit instructs courts to consider "the timing of the proffered bad act and its degree of resemblance to the conduct charged in the case." *United States v. Agramonte-Quezada*, 30 F.4th 1, 15 (1st Cir. 2022) (quoting *United States v. Raymond*, 697 F.3d 32, 38 (1st Cir. 2012)).

Then, if the proposed evidence has special relevance, in the second part of the test, the evidence must survive a Rule 403 balancing analysis, weighing probative

weight against prejudicial effect. *Tkhilaishvili*, 926 F.3d at 15. Rule 403 gives the Court discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Even when the prejudicial impact of the evidence in question is "considerable," it is admissible if that prejudicial impact does not "substantially outweigh" the evidence's probative value when the evidence is "highly probative of [the defendant's] guilt in multiple ways." *United States v. Gaudet*, 933 F.3d 11, 18 (1st Cir. 2019).

### The Evidence Is Specially Relevant To Show Defendant's Knowing and Intentional Possession of the Charged CSAM

All of the evidence challenged in Defendant's motion in limine is relevant and admissible evidence of Defendant's motive, intent, knowledge, and absence of mistake with respect to the charged counts of receipt and possession of CSAM. To prove criminal receipt and possession of CSAM, the government bears the burden to establish beyond a reasonable doubt that the defendant's possession was knowing. 18 U.S.C. § 2252(a)(2) and (4)(B). Evidence that Defendant possessed images of computer-generated children engaged in sexual acts on another laptop, and downloaded CSAM via a peer-to-peer image sharing network while on supervised release, is specially relevant because it tends to show that he knowingly and intentionally possessed the other CSAM with which he is charged in this case. Rule 404(b) expressly provides that evidence of a defendant's other acts may be admissible to prove intent, knowledge,

6

absence of mistake, or lack of accident. The First Circuit has also endorsed the use of Rule 404(b) to admit such evidence "[i]n prosecutions for 'possession' offenses," because, in such cases, "the central issue is often whether the defendant was in *knowing* possession." *United States v. Aguilar-Aranceta*, 58 F.3d 796, 798 (1st Cir. 1995). As the First Circuit explained:

> The knowledge element is difficult to prove, and defendants commonly claim that they were merely unwitting participants. Where the evidence is susceptible to the explanation that the acts alleged to constitute the crime were innocently performed and the crucial issues of intent and knowledge are keenly disputed, we have held that it is within the judge's discretion to permit the government to introduce evidence of prior similar offenses to demonstrate the unlikeliness that the defendant was merely an innocent and unknowing bystander.

Even though Defendant has not yet explicitly asserted a "mistake or accident" defense, the Government bears the burden to prove beyond a reasonable doubt each element of the offense, including knowing possession and the absence of mistake or accident. And the prosecution is "entitled to prove its case by evidence of its own choice," as long as that evidence complies with the Rules. *United States v. Ford*, 839 F.3d 94, 109 (1st Cir. 2016) (citing *Old Chief v. United States*, 519 U.S. 172, 186 (1997)); *United States v. Dudley*, 804 F.3d 506, 516–17 (1st Cir. 2015).

Here, Defendant's possession of computer-generated child erotica on a laptop in November 2021, after his arrest for the crimes charged in this case, and that he used a peer-to-peer network to download additional CSAM, constitutes evidence from which a jury could reasonably conclude he had a sexual interest in children and therefore that his possession of the CSAM with which he is charged was knowing,

intentional, and not a mistake. *See United States v. Tanguay*, 982 F. Supp. 2d 119, 121–22 (D.N.H. 2013) (finding evidence that the defendant possessed stories graphically describing sexual encounters between adults and children and sexually suggestive, but not necessarily pornographic, photographs of children "specially relevant" to his knowing possession of the CSAM, and therefore admissible under Rule 404(b)).

The relevance of evidence that Defendant downloaded CSAM while on pretrial release, and possessed images of computer-generated children engaged in sexual acts on another laptop, does not stem from an impermissible inference about his character. The government does not seek to admit the evidence to show that Defendant's possession of the other materials makes him the type of person who would be more likely to possess CSAM. Rather, the probative value comes from the fact that it is extremely unlikely "that the same person could be repeatedly victimized by the placement of such materials on his computer without his knowledge." *Tanguay*, 982 F. Supp. 2d at 21 (citation omitted and cleaned up); *see also United States v. Palmer*, No. 1:15-CR-00154-JAW, 2016 WL 4625174, at *4–5 (D. Me. Sept. 6, 2016) (finding evidence that defendant had photographs of naked children posted on the walls of his apartment, and children's clothing and baby pacifiers in his apartment, admissible under Rule 404(b) as tending to confirm that defendant had a sexual interest in children and therefore that he had a motive to access CSAM and the intent to do so, and that he did not access the CSAM by mistake or accident.) The fact that the evidence reflects Defendant's possession of similar material after his arrest makes it

even more relevant to show that Defendant intentionally and knowingly possessed the earlier material.

Moreover, Defendant may dispute at trial that he was the one who possessed the CSAM, and the Government retains the burden of proof to establish that Defendant knowingly possessed CSAM. *Dudley*, 804 F.3d at 516–17. The fact that Defendant possessed images of child erotica on a different laptop even after he was arrested, and sought to download additional CSAM while on pretrial release, makes it more likely that he had ownership or control of the laptop found in the rectory on October 21, 2021, which contained the same type of images of CSAM and erotica. *See Aguilar–Aranceta*, 58 F.3d at 799 ("[W]e have held that it is within the judge's discretion to permit the government to introduce evidence of prior similar offenses to demonstrate the unlikeliness that the defendant was merely an innocent and unknowing bystander"); *United States v. Goguen*, No. 1:16-CR-00167-JAW, 2017 WL 2869411, at *5–6 (D. Me. July 5, 2017) (finding evidence that defendant previously possessed child erotica was specially relevant and admissible because it made it more likely that he knowingly possessed a later laptop with similar images of child erotica). *See also United States v. Gendron*, 18 F.3d 955, 969 (1st Cir. 1994) (upholding admission of evidence of child erotica that was not illegal in CSAM case). Because the other acts at issue in Defendant's motion in limine bear directly on the likelihood that Defendant knowingly and intentionally possessed the CSAM for which he is charged in this case, or that he mistakenly or accidentally possessed the material, those acts have a "special,

non-propensity relevance" and are admissible under Rule 404(b). *Agramonte-Quezada*, 30 F.4th at 16. That special relevance is all the more apparent because the proffered bad acts are nearly indistinguishable from the conduct charged in this case and took place after his arrest. The first step of the test for admission of 404(b) evidence is therefore met.

## The Evidence Is More Probative than Prejudicial

When weighed against its strong probative value, the evidence in question here does not have any undue or unfair prejudicial effect on Defendant. The First Circuit has instructed that "the phrasing of Rule 403 makes it clear that the discretion to exclude does not arise where the balance between the probative worth and the countervailing factors is debatable; there must be a significant tipping of the scales against the evidentiary worth of the proffered evidence." *Aguilar–Aranceta,* 58 F.3d at 800 (cleaned up). The evidentiary worth of the evidence that is the subject of Defendant's motion in limine is apparent and significant; it is evidence of Defendant's interest in CSAM and the likelihood that he knowingly and intentionally possessed the CSAM he is charged with here because he also possessed other similar material. In short, as described in more detail above, the evidence goes directly to his knowledge, intent, and to lack of mistake or accident.

To the extent that there is prejudice to Defendant from the admission of this evidence, it stems directly from its strong probative value. That prejudice is not unfair, and it is "only unfair prejudice which must be avoided" under Rule 403. *Id*. Therefore,

10

any risk of prejudice does not significantly tip the scales against the weighty evidentiary worth of the evidence in question. Moreover, there is little risk that introduction of evidence that Defendant possessed other child erotica and pornography will cause any prejudice to Defendant beyond that caused—and unavoidably so—from the introduction of the CSAM he is charged with possessing.

There is also no risk of undue delay or waste of time with trials within the trial regarding the evidence in question. Each category of evidence can come in through the testimony of one agent, and is the kind of evidence that is well within the ken of each agent to present efficiently. With respect to the first category of evidence, taken from the laptop Defendant turned in to U.S. Probation in November 2021, it will come in through the testimony of Forensic Analyst Gerald W. Gent, who will already be required to testify regarding his forensic analysis of the laptop and hard drives seized during Defendant's initial arrest. There is no need for additional witnesses or unduly burdensome cross-examination, and there is overwhelming evidence that Defendant is the one who possessed and used the laptop.

The second category of evidence will come in through the testimony of Detective Christopher Moore of the Overland Park Police Department in Kansas, who identified files downloaded by the IP address associated with the residence of Defendant's sister, where Defendant was living, and confirmed the downloaded files contained CSAM. Detective Moore is also the person who reviewed the devices of the

11

other residents of the house to eliminate them as possible suspects, and conducted the forensic preview of the external hard drive seized from Defendant's bedroom.

Each agent is well qualified to explain his role in the investigation and the steps he took to obtain the evidence, and Defendant will be able to cross examine each agent without any undue delay or burden. *See United States v. Sweeney*, 887 F.3d 529, 540 (1st Cir. 2018) (finding evidence admissible under Rule 403 where there was significant circumstantial evidence linking the defendant to a computer used to download CSAM using a peer-to-peer network even where there was some evidence that could weigh against that conclusion and the defendant claimed that someone else in the residence could have accessed the non-password protected router and shared the CSAM). Because the evidence is question is far more probative than unfairly prejudicial, it survives Rule 403 balancing and should be admitted.

Finally, given the significant probative value of the evidence, to the extent the Court has concerns about the potential for unfair prejudice, the proper remedy is a limiting instruction rather than exclusion. Though the government does not believe such an instruction is necessary in this case, the Court could, for example, provide the members of the jury a limiting instruction that they cannot use the evidence as a basis to conclude that Defendant is the kind of person who is more likely to unlawfully possess CSAM; rather, the jury is only to consider the evidence to the extent that it bears on whether Defendant knowingly and intentionally possessed the CSAM with which he is charged here. The First Circuit has recognized that such an instruction

serves "to guard against any improper use of" evidence admitted under Rule 404(b). *United States v. Williams*, 717 F.3d 35, 43 (1st Cir. 2013).

## CONCLUSION

For all the reasons set forth above, the United States respectfully requests that the Court deny Defendant's motion in limine.

    Respectfully submitted,

    UNITED STATES OF AMERICA,
    By its Attorneys,

    ZACHARY A. CUNHA
    United States Attorney

    */s/ Kevin Love Hubbard*
    Kevin Love Hubbard
    John P. McAdams
    Assistant United States Attorneys
    One Financial Plaza, 17th Floor
    Providence, Rhode Island 02903
    (401) 709-5000
    (401) 709-5001 (Fax)

**CERTIFICATION OF SERVICE**

  I hereby certify that, on June 7, 2023, I caused the foregoing document to be filed by means of this Court's Electronic Case Filing (ECF) system, thereby serving it upon all registered users in accordance with Fed. R. Civ. P. 5(b)(2)(E) and 5(b)(3) and Local Rules Gen 304 and 305.

                */s/ John P. McAdams*
                John P. McAdams
                Assistant United States Attorney