UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| V. : | Case No.: 1:21-CR-00120-WES-PAS |
| : | |
| JAMES WARD JACKSON : | |

### DEFENDANT'S SENTENCING MEMORANDUM

Defendant, James Jackson, by and through counsel, submits this memorandum to aid the Court with imposing a sentence in this case that is "sufficient, but not greater than necessary" to achieve the statutory sentencing purposes of 18 U.S.C. § 3553(a). For the reasons below, Mr. Jackson asks the Court to adopt the parties' joint sentencing recommendation of 5 years or 60 months of incarceration, followed by a term of supervised release with conditions.

### I.   BACKGROUND

Mr. Jackson was arrested by state and federal authorities on Saturday, October 30, 2021, following the execution of a search warrant at his former home and place of employment, the rectory of St. Mary's Church on Broadway in Providence, RI where he served as a catholic priest. The warrant execution yielded the discovery of child pornography, which formed the basis of Mr. Jackson's arrest and resulting criminal charges. The State initially charged him via criminal complaint with (1) Possession of Child Pornography in violation of RIGL § 11-9-1.3 (a)(4); (2) Mail, Transport, Deliver, or Transfer of Child Pornography in violation of RIGL § 11-9-1.3 (a)(2); and Child Erotica Prohibited in violation of RIGL § 11-9-1.6.[1] Following his arrest, Mr. Jackson was held overnight at the Rhode Island Department of Corrections and released on Sunday, November 1, 2021, on surety bail. He retained counsel later that day.

---

[1] Due to the government deciding to indict this case, the State charges were dismissed and sealed.

On November 1, 2021, the government filed a criminal complaint charging James Jackson with Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), and Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2).[2] On November 2, 2021, a warrant was issued for his arrest.[3] On the same date, government counsel notified defense counsel of the warrant. Upon receiving this information, Mr. Jackson voluntarily surrendered to federal authorities with the assistance of his lawyer and was taken into custody without incident.[4] Because the ACI failed to produce Mr. Jackson in Court that same day for his initial appearance because he was positive for COVID-19. In response, the Court vacated the warrant and ordered his immediate release.

On November 3, 2021, while suffering from COVID-19, Mr. Jackson appeared before the Court remotely, with the assistance of his attorney, for both an Initial Appearance and Bond Hearing.[5] At that time, the Court ordered him released over the government's objection on $10,000 unsecured appearance bond with home detention, GPS monitoring and other conditions of release.[6] Mr. Jackson was also permitted to relocate from Rhode Island to Kansas where he temporarily resided with his sister and brother-in-law.

On December 1, 2021, a federal grand jury returned a two-count Indictment charging Mr. Jackson with (1) Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) and (2) Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).[7] On December 21, 2021, he remotely appeared before the Court for an arraignment, entered not guilty pleas, and was released on existing conditions of bond.[8]

---

[2] PSR, ¶.1.
[3] PSR, ¶.1.
[4] *Id.*
[5] PSR, ¶.3.
[6] *Id.*
[7] PSR, ¶.4.
[8] PSR, ¶.5.

2

On July 12, 2022, U.S. Probation filed a Pretrial Violation Memorandum and Request for Issuance of a Warrant alleging that Mr. Jackson violated his conditions of pretrial release, by accessing child pornography, becoming the target of a new law enforcement investigation in Kansas where he was residing, and possessing computer equipment not authorized and approved by Pretrial Services.[9] The Court granted the request and issued the arrest warrant. On July 15, 2022, Mr. Jackson was arrested in Kansas and appeared in U.S. District Court for the District of Kansas, where he was ordered detained and to be extradited back to Rhode Island.[10]

On September 14, 2022, after returning to the District of Rhode Island, Mr. Jackson appeared before this Court for a Bond Revocation Hearing.[11] At that time, Mr. Jackson, through defense counsel, requested a continuance of the hearing and he was ordered to remain detained.[12] On October 3, 2022, Mr. Jackson reappeared before the Court and admitted to violating the conditions of his release.[13] The Court accepted his admission, and accepted his consent to remain detained.[14] Mr. Jackson has continuously remained in pretrial custody since his second arrest on July 15, 2022.

On June 8, 2023, Mr. Jackson reappeared before this Court and pleaded guilty to Count (1) of the Indictment, Receipt of Child Pornography, in accordance with a pretrial agreement he entered with the government.[15] The Court accepted Mr. Jackson plea and adjudged him guilty.[16] He is currently scheduled to appear for sentencing on December 13, 2023, at 1:00 PM.

---

[9] PSR, ¶.6.
[10] PSR< ¶.7.
[11] PSR, ¶.8.
[12] *Id.*
[13] PSR, ¶.9.
[14] *Id.*
[15] PSR, ¶.10.
[16] *Id.*

3

## THE PRE-SENTENCE REPORT

U.S. Probation issued its final presentencing report (PSR) related to this case on October 4, 2023. The PSR calculates Mr. Jackson's criminal history at category I[17] and a total offense level of 32.[18] Based upon these calculations, his advisory sentencing guideline range is 121 months to 151 months of incarceration.[19] The defense has no objections to the PSR.

## II. SENTENCING FACTORS AND CONSIDERATION

The District Court is required to fashion a sentence that is "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment set forth in 18 U.S.C. § 3553 (a). *United States v. Booker*, 543 U.S. 220 (2005). Sentencing should begin with a calculation of the applicable sentencing guidelines range. *Gall v. United States*, 128 S. Ct. 586, 596 (2007) (*citing Rita v. United States*, 127 S. Ct. 2456, 2480 (2007)). The guidelines calculation is a starting point and initial benchmark for the Court to consider, however, it is not the only sentencing consideration. *Id.*

A Court may not presume the guidelines range is reasonable but must make an individualized assessment of each defendant based upon the facts presented in each case. *Gall*, 128 S. Ct. at 597 (emphasis added). After both parties are afforded an opportunity to argue for whatever sentence they deem appropriate, the Court must then consider the factors[20] of 18 U.S.C.

---

[17] PSR, ¶.48.
[18] PSR, ¶.45.
[19] PSR. ¶.82.
[20] To determine an appropriate sentence that is sufficient, but not greater than necessary, the Court shall consider:
    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed:
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
    (3) the kinds of sentences available;

§ 3553 (a) to determine the most appropriate sentence. *Id.* In the instant case, Mr. Jackson joins the government in a sentencing recommendation of 60 months, followed by a term of supervised release with standard and special conditions.

### A. Acceptance of Responsibility

Mr. Jackson's conduct is egregious by any measure, and arguably even more so for a Catholic priest. The tenets of his religion bear certain similarities to the criminal justice system. The Catholic faith teaches that the confession of sins can result in forgiveness from God, and the bestowing upon the faithful a second chance. Similarly, the judicial system rewards those who accept ownership for their crimes and also responsibility for the harm caused by committing them. Mr. Jackson has been involuntarily removed from the priesthood but has not abandoned his faith. He rightfully confessed his sins associated with the crimes in this case, just as he pleaded guilty and accepted responsibility before this Court. He also issued a statement to his fellow priests, superiors, and countless parishioners, apologizing for his hypocritical conduct, completely unbecoming of a devout Catholic and more so, a clergyman. Just as he has received the grace of forgiveness from many of the countless people offended by his conduct, he hopes this Court too will recognize his acceptance of responsibility and fashion a sentence that resembles forgiveness and a second chance.

---

(4) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
(5) any pertinent policy statement issued by the Sentencing Commission;
(6) the need to avoid unwarranted sentence disparities among the defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553 (a).

## B. History and Characteristics of the Defendant

Mr. Jackson is age 68 and has absolutely no criminal history. Statistically, the rates of recidivism decrease with age.[21] Even if the Court imposes the applicability mandatory minimum sentence of 60 months, Mr. Jackson will be over 70 upon his release. A sentence that is much longer could result in a life sentence for this first-time offender. "[O]ffenders over age 50 have a recidivism rate of 9.5%[22], which also mitigates the need for an extended jail sentence to deter potential future misconduct by Mr. Jackson. Further, Mr. Keating who performed a sex offender risk assessment of Mr. Jackson in preparation for sentencing also opined that he is at a low risk of recidivism. He asks the Court to take into consideration when deciding upon the propriety of the parties' joint recommendation of 60 months of incarceration.

By way of further background, Mr. Jackson is a well-educated man, holding both Bachelors and Masters Degrees. He has served the Catholic Church as a priest since 1994. In this calling, he held various positions to include serving as pastor and mentor to other priests. He has also shepherded countless parishioners over the years, and worked in various communities by feeding the hungry, helping the poor, and anointing the sick. Mr. Jackson also honorably served in the United States Navy for four years as a Chaplain, which included a 6-month tour in support of Operations Desert Shield and Desert Storm, whereby the United States and allies liberated Kuwait following the invasion by Saddam Hussein and neighboring Iraq.

While there is no excuse or justification for Mr. Jackson's admitted misconduct, such is not without explanation. As a young boy, while participating in Boy Scouts, Mr. Jackson was

---

[21] Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, A Component on the Fifteenth Year Report on the U.S. Sentencing Commission's Legislate Mandate, May 2004, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf.
[22] *Id.* at Section F, para 2.

6

molested. These events were not timely reported or disclosed to anyone, foreclosing the possibility of young James receiving proper care or treatment for his trauma. In any event, these experiences shaped and socialized him, at least partially, into the man he is today. Mr. Jackson channeled that trauma and addressed it by pursuing and viewing child pornography. His doing so resulted in the development of an addiction to these obscene visual depictions, which explains how and why he comes before this Court. Mr. Jackson voluntarily underwent a sex offender risk evaluation in preparation for sentencing. Participating in the evaluation enabled him to develop better insight into his wrongdoing, identify and disclose his unchecked demons from the past, and acquire desire for treatment and rehabilitation. He asks the Court to factor in this information when determining an appropriate sentence.

### C. Collateral Consequences

Mr. Jackson was involuntarily removed from the priesthood, a life to which he devoted himself for approximately 30 years. Priests who retire are permitted to remain assigned to a church, living along peers until and during their final days. For Mr. Jackson, who only has one older sibling and no other real family, he will spend his final years (or days) in exile from the church, forced to start life anew, with little family, few friends, and without the support of the church – something he had counted on long ago who when he joined the clergy. This is an immeasurable collateral consequence for him.

Second, as the Court knows, Mr. Jackson must register as a sex offender upon his release from incarceration. He will most likely spend the remainder of his natural life under some form of supervision. He asks the Court to take this into account when considering the parties' joint sentencing recommendation.

### III. ATTACHMENTS

A. Statement of Apology to Church, Fraternity, and Others;

B. Statements of Support;

C. Photos;

### IV. MISCELLANEOUS REQUEST

Mr. Jackson asks the Court to recommend to the BOP that he be allowed to serve out his sentence at a facility in or as close to Kansas as possible so that he may receive visits and maintain contact with his family.

### V. CONCLUSION

Based upon the foregoing, Mr. Jackson respectfully asks the Court to impose a sentence of 60 months, which he contends is "sufficient, but not greater than necessary" to achieve the objectives of 18 U.S.C. § 3553(a).

Respectfully submitted this 11th day of December 2023.

>JAMES JACKSON
>By Counsel,
>
>/s/ John L. Calcagni III, Esq
>John L. Calcagni III (BBO# 657433)
>Law Office of John L. Calcagni III, Inc.
>72 Clifford Street, Suite 300
>Providence, RI  02903
>Phone: 401-351-5100
>Fax: 401-351-5101
>jc@calcagnilaw.com

8

## CERTIFICATION

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on December 11, 2023.

/s/ John L. Calcagni III, Esq
John L. Calcagni III (BBO# 657433)
Law Office of John L. Calcagni III, Inc.
72 Clifford Street, Suite 300
Providence, RI 02903
Phone: 401-351-5100
Fax: 401-351-5101
jc@calcagnilaw.com