IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>JAMES W. JACKSON | Cr. No. 21-CR-120-WES-PAS |

GOVERNMENT'S SENTENCING MEMORANDUM

For the reasons set forth herein, the defendant should be sentenced to a term of imprisonment of 60 months, a term of at least ten years supervised release, the mandatory $5,000 special assessment, and restitution to each of the victims and amounts identified in Paragraph 25 of the Presentence Investigation Report. The recommended sentence is sufficient but no greater than necessary to punish the defendant for his illegal conduct, to protect the public from him, and to deter others from engaging in this reprehensible behavior.

Nature and Circumstances of the Offense

The victims in this case are real children who were raped and molested in order to provide sexual gratification for the defendant. By repeatedly downloading and viewing child sexual abuse material for his own gratification, this defendant engaged in repeated acts of dehumanization which re-victimized the children. As the First Circuit noted:

> The Supreme Court has repeatedly explained, for thirty years, that individuals depicted in child pornography are harmed by the continuing dissemination and possession of such pornography containing their image. Such materials are a permanent record of the children's

1

>participation and the harm to the child is exacerbated by their circulation. Indeed, the Court has stated that as a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated. Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being. These statements were well supported by medical and social science.

*United States v. Kearney,* 672 F.3d 81, 94 (1st Cir. 2012)(internal citations and quotations omitted).

Disturbingly, even after being arrested and released by this Court, the defendant quickly began engaging in exactly the same conduct again in another state.  More than 12,000 images and videos depicting child sexual abuse were located on the defendant's computers.  These materials included pre-pubescent minors, sadistic and masochistic conduct, and bestiality. Through his reprehensible conduct, the defendant fueled the market for child sexual abuse material and further harmed the victims.

Unfortunately, the 190 victim series who were identified on the defendant' computers represent only fraction of the children whose sexual abuse was recorded and located on the defendant's devices.  The rest of the more than 12,000 images and videos were not able to be identified as known victims by the National Center for Missing and Exploited Children. This is unsurprising.  A 2018 Study published by ECPAT International and Interpol noted there are more than 1 million media files of child sexual exploitation and abuse materials in the International Child Sexual Exploitation (ICSE) Database.  *Towards A Global Indicator on Unidentified Victims in Child Sexual*

2

*Exploitation Material* (2018).[1]  More than 50% of the files portray child victims that have been not identified by law enforcement.  Over 60% of the unidentified victims are prepubescent.  *Id.*  The study found a link between the age of the child on and the severity of the abuse.  When victims were younger, the abuse was more severe.  *Id.*

The First Circuit has repeatedly found that the effects of demand for child pornography, namely the perpetuation or increase of supply, justifies lengthy jail terms for child pornography possession.  *See e.g., United States v. Hassan-Saleh-Mohamad*, 930 F.3d 1, 9 (1st Cir. 2019) ("fueling demand and supply…was a reasonable factor for the court to weigh"); *United States v. Gall*, 829 F.3d 64, 75 (1st Cir. 2016) (possession of child pornography fueled the market and thus harmed children).   One of the goals of sentencing in child pornography cases is the reduction of demand for child pornography, and serious jail sentences aid in achieving that goal.  *See id.*

Victim Impact

Given the scope of proliferation of child sexual abuse material, and the volume of such cases coming before the courts for sentencing, it is critical to avoid developing callousness about the harm caused by defendants who engage in this behavior.  Of the 190 identified victim series, 18 submitted Victim Impact Statements for the Court to consider.  Some of those series contain multiple victims and statements.  Understandably, the remaining 190 identified victim series elected not to.

---

[1] Available at https://childrens-rights.digital/hintergrund/index.cfm/topic.324/key.1534

The victim in the "Vicky" series, which Jackson downloaded onto his computer stated in part:

> I live everyday with the horrible knowledge that many people somewhere are watching the most terrifying moments of my life and taking grotesque pleasure in them. I am a victim of the worst kind of exploitation: child porn. Unlike other forms of exploitation, this one is never ending. Everyday, people are trading and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they have seen every part of me. They are being entertained by my pain and shame.

The victim in the BluePillow1 series stated in part:

> My childhood innocence was stolen and continues to be exploited on a daily basis by strangers. Knowing that I cannot retrieve the photos or videos, nor can I remove them from the internet and dark web makes me feel helpless and powerless… The effects of ongoing abuse are irregular and unpredictable. Every day is a new challenge and I never know what's going to happen…I am scared to leave the house in fear that someone will know who I am and either put me in danger, or make me eel less than myself, or draw attention to me in ways I do not want.

Many of the victims described receiving "fan mail" from pedophiles, stalkers and other attempts by child pornography collectors to locate them, challenges in relationships and intimacy; inability to move forward, panic and anxiety attacks, and countless other harms.

Notwithstanding suffering these horrible effects, the victims are often magnanimous. As part of her Victim Impact Statement, the victim in the Vicky series submitted a letter from her husband to the defendant, which states in part:

> In my home every day is riddled with challenges…Unfortunately, time can't heal all things, this is especially true as we face the persecution of a wound opened again and again for the pleasure of strangers.  You have more impact than you know.  It is our desire not only that justice be served, but that true change would be enacted through the enlightenment of this unfortunate situation. …You are a participant in that crime.  You became part of the problem.  I am asking you now to help us make amends for your sins and the sins of many.  Pease speak out against this act, impact the world around you for good, And turn away from what I can only describe as a great evil in our midst.  This evil creeps into the lives of otherwise good men, and begins to corrupt the heart. I am imperfect so how could I expect you to be?  You have already been forgiven, and I want nothing more than your full restoration without the mar of your past habits and appetites.  Unfortunately, that means consequences; those that challenge you and place you in new scenarios in life.  I believe God has a plan for you, He has not cast you aside or condemned you outright.  Please consider the ways you can turn your perspective around, experience true repentance, and walk freely as a man redeemed.

<u>History and Characteristics of the Defendant</u>

A particularly disturbing fact in this case is the defendant's position of authority as a Catholic priest and pastor. As such, the defendant was looked up to by many as paragon of moral authority.  Thus his conduct not only effects the numerous victims whose sexual exploitation he exacerbated, but also the many parishioners and others who looked to him for spiritual guidance.  On such person, Deacon Charles Beard of the Diocese of Tulsa, Oklahoma wrote a letter to the Court which has been submitted for the Court's consideration.  Deacon Beard, who had known Fr. Jackson from the age of 10 or 11, considered him "the best teacher I ever had." Deacon Beard described the disillusionment and confusion upon learning that the admired priest, one whom had

5

heard his "early adolescent confessions" could engage in such depraved conduct. It made him reevaluate everything he thought he knew about the defendant, and he became horrified. Deacon Bearded concluded in part:

> When you sentence Fr. Jackson, the victims of child sex abuse should be at the front of your mind. You must do right by them. However, I ask that you secondarily consider those of us whom Fr. Jackson fooled for so long – those who are, in a sense, his spiritual victims. While our victimhood pales in comparison to the babies and children in the videos Fr. Jackson downloaded, we deserve justice as well.

The defendant claimed, for the first time during his presentence investigation interview, that he was molested at the age of 10 by the mother of a fellow child in his Boy Scout troop. It is impossible for the government to verify this claim, but many victims of sexual assault do not disclose such abuse for many years. Assuming the truth of the accusation, it does not justify the defendant's reprehensible conduct. The overwhelming majority of sexual assault victims do not engage in the abuse of others.

This defendant clearly has some form of addictive personality. To engage in downloading child sexual abuse material while under the supervision of a federal court, shortly after being arrested for the same conduct, demonstrates either a flagrant disregard for the Court's authority or an inability to control one's own behavior. Either explanation creates a high risk of recidivism.

Deterrence

Congress, the Supreme Court, and the Sentencing Commission have all expressed the view that deterrence is an important factor when fashioning an

appropriate sentence in child pornography cases. *See e.g., Osbourne v. Ohio,* 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand".) *Se also, e.g., United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.").

## Unwarranted Sentencing Disparities

Congress and the United States Sentencing Commission have determined that the appropriate framework for sentencing in federal cases is 18 U.S.C. § 3553 and the United States Sentencing Guidelines, as viewed in the light of *Booker* and its progeny. For at least the last decade, that has meant a conviction of possession of child sexual abuse material in a federal court demands a sentence of imprisonment. According to data collected by the United States Sentencing Commission, the following sentences were imposed nationally in child pornography cases:

| Year | Prison Only | Split Sentence | Probation only |
|---|---|---|---|
| 2022 | 96.9% | 1.9% | .9% |
| 2021 | 97% | 1.6% | 1% |
| 2020 | 98% | 1.2% | .5% |

| 2019 | 96.9% | 2.1% | .7% |
|---|---|---|---|
| 2018 | 96.8% | 2.3% | .6% |
| 2017 | 96.1% | 2.5% | .8% |
| 2016 | 97% | 2% | 0.7 % |
| 2015 | 97.1% | 1.5% | 1.0% |
| 2014 | 97.2% | 2.2% | 0.4% |
| 2013 | 97.5% | 1.6% | 0.5% |
| 2012 | 97.0% | 1.8% | 0.7% |

Available at http://www.ussc.gov/research/data-reports/geography. (Statistics cited come from Table 4 of *Statistical Information Packet for First Circuit* from each cited year).

In this district, while many sentences for child sexual abuse material offenses are outside the guideline range, they nonetheless consistently involve prison sentences at or about the recommended sentence here.

## Conclusion

For the reason set forth herein, the government recommends the defendant be sentenced to a term of imprisonment of 60 months followed by a period of supervised release, the mandatory $100 special assessment, the mandatory $5,000 special assessment, and restitution to the victims as outlined in paragraph 25 of the PSR.

Respectfully submitted,

ZACHARY A. CUNHA
United States Attorney

/s/ John P. McAdams

JOHN P. McADAMS
Assistant U. S. Attorney

## **CERTIFICATE OF SERVICE**

      I hereby certify that on December 11, 2023, I caused the Government's Sentencing Memorandum to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic Notification

John L. Calcagni III, Esq.

                                          /s/ John P. McAdams
                                          JOHN P. McADAMS
                                          Assistant U. S. Attorney,
                                          U. S. Attorney's Office
                                          50 Kennedy Plaza, 8th Floor
                                          Providence, RI 02903
                                          401-709-5000